MAY TERM, 1905. 453

Chicago, etc., R. Co. *v.* Indianapolis, etc., Tract. Co.—165 Ind. 453.

# CHICAGO, INDIANAPOLIS & LOUISVILLE RAILWAY COMPANY *v.* INDIANAPOLIS & NORTHWESTERN TRACTION COMPANY.

[No. 20,475. Filed May 23, 1905. Rehearing denied November 2, 1905.]

1. STATUTES. — *Street Railroads.* — *Railroad Crossings.* — *Interlocking Works.—When Required.*—The statute of 1903 (Acts 1903, p. 125), requiring every street, interurban and suburban street railroad company to provide interlocking works and derailing apparatus at all its railroad crossings "within six months after it commences to use such crossing," means six months after the actual use of the crossing, and not six months from the determination of the condemnation proceedings against such railroad for a right of way at such crossing. p. 457.

2. STREET RAILROADS.—*Condemnation.—Payment of Award.—Statutes.*—By the payment of the award, a street railroad company may take immediate possession of a railroad crossing condemned for a right of way· and if it uses such crossing it must provide same with the interlocking works and derailing apparatus as provided by the act of 1903 (Acts 1903, p. 125). p. 458.

3. PLEADING.—*Complaint.—Injunction.—Street Railroads.—Statutes.*—A complaint alleging that defendant railroad company is about to prevent the plaintiff street railroad company's use of its railroad crossing; that such crossing has been in use over six months and that plaintiff has not provided same with interlocking works and derailing apparatus as provided by statute (Acts 1903, p. 125), is sufficient. p. 458.

4. STREET RAILROADS.—*Crossings.—Regulation of.—Police Power.*—The State has the power to require that interlocking works and derailing apparatus shall be provided at railroad crossings. p. 459.

5. CONSTITUTIONAL LAW.—*Street Railroads.—Judicial Powers.—Right to Raise Question.*—A street railroad company, having used a railroad crossing over six months without attempting to provide interlocking works and derailing apparatus as required by statute (Acts 1903, p. 125), can not raise the constitutional question whether judicial power to approve the apparatus prescribed can be conferred upon the Auditor of State. p. 459.

From Clinton Circuit Court; *Joseph Claybaugh,* Judge.

Suit by the Indianapolis & Northwestern Traction Com-

454    SUPREME COURT OF INDIANA,

Chicago, etc., R. Co. *v.* Indianapolis, etc., Tract. Co.—165 Ind. 453.

pany against the Chicago, Indianapolis & Louisville Railway Company. From a decree for plaintiff, defendant appeals. *Reversed.*

*E. C. Field, H. R. Kurrie* and *Guenther & Clark,* for appellant.

*Pierre Gray,* for appellee.

MONTGOMERY, J.—Appellee commenced this action on August 13, 1904, for an injunction to prevent the threatened removal of its track from appellant's right of way at the crossing of the roads of the two companies. Upon the verified complaint and a proper undertaking a temporary restraining order was issued without notice. At the time fixed for a hearing after notice, appellant appeared, and moved for a dissolution of the restraining order, which motion was overruled, and, over appellant's objection, the temporary injunction was continued in force until the final hearing of the cause, and from this interlocutory order the appeal was taken.

The assignment of errors challenges the sufficiency of the complaint and the action of the court in overruling appellant's motion to dissolve the restraining order and in continuing in force the temporary injunction.

The complaint alleges, in substance, that the appellee is a street railway corporation organized February 14, 1902, under an act approved June 4, 1861 (Acts 1861 [s. s.], p. 75, §4143 R. S. 1881), and other acts amendatory and supplementary thereto, for the purpose of constructing, maintaining and operating a street railroad in the cities of Indianapolis, Lebanon, Frankfort, LaFayette and Crawfordsville, and an interurban street railroad between and through said cities; that on August 21, 1903, it commenced proceedings to condemn a right of way sixty-six feet in width at a particular point named, said point not being upon a highway or street, across the track and right of way of the appellant in Clinton county; that on the 3d

day of September, 1903, the court duly appointed appraisers, who qualified and made and returned an award of $100 damages in favor of appellant; that appellee, in payment of said award, immediately deposited said sum in the office of the clerk of the Clinton Circuit Court, and, by virtue of the license thereby obtained, proceeded to and did construct a crossing over appellant's track at the point designated; that appellee acquired all necessary rights of way, franchises and privileges to construct, maintain and operate its road in and between said cities, and owns and operates said road, and in its operation carries, for hire, passengers, baggage, express matter, light freight and United States mail; that its trains run each way upon an hourly schedule, from 5 o'clock a. m. until 10 o'clock p. m. going north, and from 6:28 o'clock a. m. to 11:25 o'clock p. m. going south, with four additional limited trains each way daily, and special trains on Sundays, and that the public is largely dependent upon the regular and continuous operation of said road; that appellant is claiming the right to remove said crossing and prevent the operation of appellee's road over appellant's track at said crossing, and is threatening so to do without appellee's consent, thereby preventing appellee from discharging its duties and obligations to the public as a carrier of persons, property, etc., all to the great damage and irreparable loss of appellee; and an emergency exists, on account of appellant's threat, so to act at once; that on the —— day of September, 1903, appellant obtained a change of venue in said appropriation proceedings, and said cause was transferred from the Clinton Circuit Court to the Tipton Circuit Court, where the same is still pending on appellant's written exceptions to said award; that appellant is threatening to and will remove said crossing before final judgment in said proceeding; that appellee commenced the use of said crossing in the regular operation of its trains between Indianapolis and Frankfort on the 6th day of October, 1903, and between Indianapolis and La-

Fayette on the 7th day of December, 1903; that appellant is assuming the right to remove said crossing because appellee has not within six months from either of said dates, at its own expense, constructed, maintained and operated a system of full interlocking works with a derailing device in the tracks of each company, of such design and character as will be best calculated to prevent collisions at said crossing, and will meet with the approval of the Auditor of State; that said six months has not expired, and will begin to run only from the time such crossing is fully established, after a hearing upon said exceptions; that sections one and two of the act of the General Assembly of the State of Indiana, entitled "An act in relation to the crossings of street railroads, interurban street railroads, or suburban street railroads and railroads, and declaring an emergency," approved March 3, 1903 (Acts 1903, p. 125, §5464a *et seq.* Burns 1905), so far as they require an interurban railroad to construct, maintain and operate said interlocking works with derailing apparatus, are in violation of article 3 and §1 of article 7 of the Constitution of the State of Indiana, in attempting to confer judicial power upon said Auditor of State, and therefore unconstitutional and void. The facts creating an emergency were alleged, followed by a prayer for an immediate restraining order enjoining appellant from interfering with said crossing or the use of the same under existing rights until a hearing upon notice, and, upon final hearing, for a perpetual injunction.

Upon the hearing after notice, appellant appeared and filed a verified motion setting out the facts in the condemnation proceedings in detail, with a copy of the instrument of appropriation, alleging that the same was in part based upon the act of 1903, *supra,* and that appellee had been continuously using said crossing for more than nine months before the filing of the complaint, and that it had not installed at said crossing any system of interlocking works or derailing devices in the tracks of each company, wherefore it asked the

court to dissolve the restraining order, and to refuse to grant an injunction; and for the further reason that the complaint was insufficient in its averments of facts it asked a dissolution of the existing restraining order and a denial of an injunction.

So much of section one of the act of 1903, *supra,* as relates to the matter under immediate consideration, is in the following language: "At every crossing of the main track of a railroad company constructed under the special proceedings, aforesaid, the company desiring to cross shall, within six months after it commences to use such crossing, at its own expense, construct, and, likewise at its own expense, maintain and operate a system of full interlocking works, with a derailing apparatus in the tracks of each company, of such design and character as will be best calculated to prevent collisions at such crossing, and will meet with the approval of the Auditor of State," etc.

Section two of said act is as follows: "If any street railroad company shall fail or refuse to construct, maintain and operate a system of full interlocking works in the manner, at the time and upon the terms stated in the preceding section, it shall forthwith cease to use the crossing required to be protected by such interlocking works, and the company whose railroad is crossed by such street railroad company may forthwith remove such crossing, and such street railroad company shall thereafter have no right to renew and use said crossing until it shall have constructed and put in operation the interlocking works required by the preceding section."

The provisions of the above statute for the construction and maintenance of interlocking works and derailing apparatus were primarily designed to guard the safety of

1. the traveling public. The danger to travelers upon these roads began with the operation of appellee's cars over this crossing. The act provides in plain and unmistakable language that "The company desiring to cross

shall, within six months after it commences to use such crossing, at its own expense, construct, and, likewise at its own expense, maintain and operate a system of full interlocking works," etc.   No intent to postpone performance of this duty to the public until after a final disposition of exceptions to the award of damages is manifest from the language employed, and we are not warranted in implying any such intent on the part of the legislature.   Such a construction would be in opposition to the unambiguous terms of the statute, and for an indefinite length of time defeat its obvious purpose, by subjecting the public to a helpless peril until parties to a private controversy should see fit to conclude their litigation.

A summary method of hearing and finally settling all objections to the particular point of crossing chosen is provided.   The company desiring to cross is given the option of paying into court the amount of the award, and enjoying the use of the crossing at once, or of awaiting the result of the litigation upon exceptions to such award, before making payment for and taking possession of the rights and privileges to be appropriated.   If it elects to deposit the amount of the award with the clerk of the court and enjoy the use of the crossing pending the litigation upon exceptions, it must also respect the rights of the public, and make such provisions for their safety during such use as the law requires.

Appellee declares in its complaint that it commenced the use of said crossing in the regular operation of its road on the 6th day of October, 1903.   The statute under which it acquired the right to said crossing allowed six months from that date in which to supply the interlocking works called for by the act, and no such apparatus having been provided for this crossing, appellee has been since the expiration of six months from said date, and at the time of bringing this suit was, in default.

Appellee further insists that, admitting its default in not furnishing the interlocking devices contemplated by the act of 1903, *supra,* yet its possession and use of the crossing may not be disturbed by appellant, for the reason that so much of the act as requires interlocking works with derailing apparatus in the tracks of each company of such a design and character as will meet the approval of the Auditor of State, is in contravention of article 3 of the Constitution of Indiana, in attempting to confer judicial power upon said auditor, and is unconstitutional and void.

The General Assembly had undoubted authority to require such interlocking works at the crossings of railroads as would protect the safety of the public. This it attempted to do by the act under consideration, which also requires such interlocking apparatus to be "of such design and character as will be best calculated to prevent collisions at such crossing."

The dominant purpose of the statute was to secure such interlocking works as would prevent collisions and accidents at crossings and consequent destruction of life and property. As a means to this end it was provided that the works installed at any such crossing should be subject to the approval of the Auditor of State. Appellee has not attempted to comply with the law by furnishing interlocking works with derailing apparatus in the tracks of both companies of any design or character. If it had furnished such interlocking apparatus as was reasonably calculated to prevent collisions at the crossing, and appeared fairly adequate to accomplish the object and purpose of the law, it might then in a proper case raise the constitutional question whether such apparatus must also meet and pass the approval of the Auditor of State. But in this collateral proceeding, in which the State is not represented, and while appellee is wholly in default, the constitutional

question advanced must be regarded as in the nature of a moot question, which this court will not consider.

The following quotation from the case of *Chicago, etc., R. Co.* v. *City of Crawfordsville* (1905), 164 Ind. 70, is pertinent to the question now under consideration: "Appellant, having been tried and convicted of a violation of this ordinance, challenges its validity, chiefly on the ground of unreasonableness in its excessive and indefinite requirements as to the time the lights shall be maintained. The court correctly sustained a demurrer to appellant's third answer. It was, in effect, that there is a device which can be attached to the railroad track in such a way that a moving train at a distance away will ignite a lamp at the crossing, which will continue to burn and light the crossing until the train has passed over and beyond; that such device would furnish ample protection to citizens against moving trains, but, by reason of the ordinance requiring the lights to burn constantly, it is unable to install such device, and the ordinance is therefore unreasonable and void. In the first place, when appellant has installed the device and adequately lighted the crossings during the passage of all night trains, or has been obstructed by appellee in a *bona fide* effort to do so, will be time enough to present such a defense."

In the case of *Pittsburgh, etc., R. Co.* v. *Town of Crothersville* (1902), 159 Ind. 330, the general principle applicable to this case is declared and well supported. In that case it was said: "With the facts already averred in said paragraphs, such allegations were necessary to show that appellant was not in fault; that it came with clean hands. * * * To grant appellant the relief prayed for under the facts found would be to aid it in maintaining a public nuisance, a crime under the laws of this State."

This statute does not make appellee's failure to furnish interlocking works punishable as a crime, but its default in that respect does authorize appellant to do the acts which

appellee now seeks to prevent by injunction. The facts which appellee in its complaint admits to be true prohibit a court of equity from granting the aid which it seeks. It follows that the court erred in overruling appellant's motion to dissolve the temporary restraining order.

The judgment is reversed, with directions to sustain appellant's motion to dissolve the temporary restraining order.